UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:14CV-00133-JHM

IP, LLC                                                                               PLAINTIFF

VS.

INTERSTATE VAPE, INC. and
IV SUPPLY COMPANY, INC.                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion by Plaintiff, IP, LLC, for a temporary restraining order and preliminary injunction [DN 14]. A preliminary injunction hearing was held on October 23, 2014. Fully briefed and argued, this matter is ripe for decision.

### I.  FACTS

Plaintiff, IP, LLC, ("IP") and Defendants, Interstate Vape, Inc. and IV Supply Company, Inc. (collectively "Interstate Vape"), sell electronic cigarettes, vaporizers, accessories, and e-liquid (e-juice). IP owns U.S. trademark applications for the marks "24/7" and "24/7 VAPOR." The following picture displays the trademark as used by IP in connection with e-liquids:



Before June of 2014, Interstate Vape sold one of its e-liquid flavors – a vanilla custard butterscotch blend -- in its own vape shops under the name 24/7 or twenty/four seven bearing the

following label (the "24/7 Shield Labels"):

 

Interstate Vape wanted to market this product through other vape shops that were not affiliated with it. Because Interstate Vape's shield logo is associated with its own vape shop, Interstate Vape decided to re-brand it. By June 2, 2014, the company had rebranded the product as "24/7 Certified" and had a new label designed. The new label reflected that the 24/7 flavor was part of Interstate Vape's Certified product line and did not include the shield logo. Interstate Vape placed the order for the new label on June 3, 2014. By June 9, 2014, the 24/7 Certified Label had been shipped to Interstate Vape, and the labels were delivered on June 12, 2014. The 24/7 Certified product looked like this:



On June 24, 2014, IP sent Interstate Vape a cease and desist letter. The letter challenged Interstate Vape's use of the "designation 24/7" with its products and claimed that IP owned the rights to that mark for use with cigarettes, electronic cigarettes, and related components and accessories. The letter stated that IP had the rights to the 24/7 mark in connection with tobacco products dating back to 2005.

In an effort to settle the dispute, the parties reached an agreement that Interstate Vape would discontinue their use of the 24/7 designation. The parties finalized the Settlement Agreement on July 29, 2014. In the Settlement Agreement, Interstate Vape "acknowledge[d] IP's ownership of and senior rights in IP's [24/7] Marks" and agreed to stop using the "24/7 designation" on its products and not to use any designation that was "confusingly similar" to that designation. Interstate Vape retained the right under the agreement, up until September 7, 2014, to sell off its existing inventory of products that had the 24/7 designation at its brick and mortar vape shops or sell its inventory to other brick and mortar retail stores in California where 24/7 products had already been sold. Further, Interstate Vape also agreed to submit a written letter to IP no later than September 12, 2014, confirming that all such obligations under the Settlement Agreement had been completed, along with listing all sales and shipments of the IV Products bearing the 24/7 designation made on or after June 26, 2014, for entities or persons other than individual retail consumers.

After entering into the Settlement Agreement with IP, Interstate Vape changed the name of its product to 24 Certified. Since then, it has been selling its product under the following label:



On September 19, 2014, IP filed suit against Interstate Vape seeking a preliminary injunction enforcing the parties' voluntary settlement agreement and enjoining Interstate Vape the use of IP's 24/7 Marks, or any other mark confusingly similar. Specifically, IP argues that Interstate Vape failed to comply with the provisions of the Settlement Agreement by: (1) removing only the "/7" from its brand name: (2) using 24 as a brand name for its e-liquid products because the mark is confusingly similar to its prior 24/7 designation; (3) using 24 in conjunction with the clock label; (4) using the same red-orange color scheme; (5) allowing third parties to use the 24 and/or 24/7 designations to advertise and sell Interstate Vape's e-cigarette products over the internet; (6) purchasing, ordering, manufacturing, or otherwise acquiring or producing any additional goods branded with the 24/7 designation; (7) failing to confirm that it destroyed all 24/7 inventory remaining on September 7, 2014; and (8) failing to provide a listing of all non-individual consumers that received Interstate Vape's products.

Interstate Vape argues that it did not breach the Settlement Agreement and that its current "24 Certified" label is not confusingly similar to IP's mark. Therefore, Interstate Vape contends that a preliminary injunction is not warranted.

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy that is generally used to preserve the

status quo between the parties pending a final determination of the merits of the action. In determining whether to issue a preliminary injunction, the Court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). It is unnecessary for the Court to make findings regarding each factor if "fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. School Dist. of Ferndale, Mich., 577 F.2d 1339, 1352 (6th Cir. 1978)).

### III. DISCUSSION

**A. Likelihood of Success on the Merits**

The Court must first consider whether the Plaintiff has demonstrated a strong likelihood of success on the merits. Tenke, 511 F.3d at 543.

#### 1. Design of the 24/7 Certified Label and Failure to Report

IP asserts that Interstate Vape breached the Settlement Agreement by creating the 24/7 Certified label after Interstate Vape agreed to stop using the 24/7 designation. The record reflects that Interstate Vape developed, ordered, and began selling the 24/7 Certified label prior to June 12, 2014. Interstate Vape did not receive IP's cease and desist letter until June 26, 2014. Thus, the 24/7 Certified label was created and in use on products before Interstate Vape's receipt of the cease and desist letter.

IP also alleges that Interstate Vape breached the Settlement Agreement by failing to provide (i) a list of sales of 24/7 product between June 26, 2014 and the effective date of the

Settlement Agreement (July 29, 2014) and (ii) a letter reporting that all inventory of 24/7 products was sold or destroyed by September 7, 2014. Interstate Vape has now provided this information to IP.

Accordingly, Plaintiff has failed to show a strong likelihood of success on the merits with respect to these two claims. The Court finds this factor is dispositive of the remaining preliminary injunction factors, and the Court denies IP's motion for preliminary injunction regarding these claims.

### 2. Third Party Sales of Products on the Internet

IP alleges that Interstate Vape breached the Settlement Agreement and infringed IP's mark by allowing third parties to continue to sell products with the 24/7 Certified Label over the Internet after September 7, 2014. The Settlement Agreement provides in relevant part that "[n]o sales of the Inventory shall be made over or through the Internet, and Interstate Vape shall promptly remove, or cause to be removed, all references to the IV Products which bear the 24/7 designation from its website(s) and other websites where such IV Products are sold or advertised." (Settlement Agreement ¶3(b).) Interstate Vape does not dispute the fact that third-parties are continuing to sell the 24/7 Certified product on the internet. Instead, Interstate Vape contends that it cannot be held responsible for what independent third-parties do with the product after they buy it.

To establish a breach of contract claim in Kentucky, a plaintiff must demonstrate the: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract. <u>Metro Louisville/Jefferson County Government v. Abma</u>, 326 S.W.3d 1, 8 (Ky. Ct. App.2009) (citation omitted). Considering the language of the Settlement Agreement, Interstate Vape specifically agreed to "cause to be removed" all references to the IV Products which bear

6

the 24/7 designation from "other websites." The Settlement Agreement did not limit the removal of the 24/7 products to only the websites controlled by Interstate Vape, but to all websites. Interstate Vape failed to offer any evidence that in light of its contractual obligations set forth in the Settlement Agreement, it caused to be removed from the internet any Interstate Vape's products sold to third parties. For this reason, the Court finds a strong likelihood of success on the merits regarding IP's claim that Interstate Vape breached paragraph 3(b) of the Settlement Agreement.

### 3. Confusingly Similar Use of IP's "24/7" Mark

Because the use of a confusingly similar mark to that of IP's "24/7" mark would constitute a breach of the Settlement Agreement, the Court will employ a likelihood of confusion analysis under trademark law to evaluate the likelihood of success on the merits of this claim. See 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:4 (4th ed. 2009) ("The phrase 'confusingly similar' is shorthand for saying that the concurrent use of conflicting marks will create a likelihood of confusion and hence infringement.").

In determining whether a likelihood of confusion exists, the Sixth Circuit considers the following factors:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its product line using the marks.

See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 280 (6th Cir. 1997). "They are also interrelated in effect," and because

"[e]ach case presents its own complex set of circumstances[,] not all of these factors may be particularly helpful in any given case." Id. Therefore, "in the course of applying them, '[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.'" Therma–Scan, Inc. v. Thermoscan, Inc., 295 F.3d 623, 630 (6th Cir. 2002) (citation omitted). See also Innovation Ventures, LLC v. N.V.E., Inc., 694 F.3d 723, 731 (6th Cir. 2012).

Thus, the question before the Court is whether there is a likelihood of confusion between IP's "24/7" mark and Interstate's Vape "24 Certified" mark.

 

### a. Strength of Mark

"'The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection it is due.'" Daddy's, 109 F.3d at 280 (quoting Frisch's Restaurant, Inc. v. Shoney's Inc., 759 F.2d 1261, 1264 (6th Cir. 1985)("Frisch II"). "'A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such

acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." Id.

Initially, Interstate Vape argues that the Settlement Agreement does not preclude it from challenging IP's mark. However, for purposes of this motion for preliminary injunction, the Court will examine the strength of the mark in light of the Settlement Agreement. On July 29, 2014, Interstate Vape acknowledged IP's ownership and senior rights in the "24/7" mark and agreed to "not to take any action inconsistent with [the] acknowledgement, including, but not limited to, using the 24/7 designation or any other designation or mark that is confusingly similar thereto or to IP's [24/7] Marks." (Settlement Agreement ¶ 1.) Case law suggests that the strength of the mark analysis is "rendered somewhat superfluous by the existence of the Settlement Agreement." Heisman Trophy Trust v. Smack Apparel Co., 637 F. Supp. 2d 146, 154 (S.D.N.Y. 2009). Because Interstate Vape has acknowledged IP's "24/7" mark and has contractually agreed not to infringe it, this factor weighs in favor of the likelihood of confusion.

### b. Similarity of Marks

Similarity of marks is a factor of considerable weight. Daddy's, 109 F.3d at 283. "The appearance of the litigated marks side by side in the courtroom does not accurately portray market conditions." Id. (citing Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1106 (6th Cir. 1991)). "Rather, courts must determine whether a given mark would confuse the public when viewed alone, in order to account for the possibility that sufficiently similar marks 'may confuse consumers who do not have both marks before them but who may have a 'general, vague, or even hazy, impression or recollection' of the other party's mark.'" Daddy's, 109 F.3d at 283 (citations omitted). As noted by the Sixth Circuit, "courts must view marks in their entirety and focus on their overall impressions, not individual features."

9

Id.; Maker's Mark Distillery, Inc. v. Diageo North America, Inc., 703 F. Supp. 2d 671, 692 (W.D. Ky. 2010).

After a review of the marks under the guidelines set forth above, the Court concludes that the parties' marks bear little similarity to each other. IP claimed mark is 24/7. Interstate Vape's claimed mark is 24 Certified. While both marks used by IP and Interstate Vape on their e-liquid products use "24" as the first word of the product label, the overall commercial impression of the parties' labels is completely different. See, e.g., Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 744 (2d Cir. 1998); Arrow Fastener Co., Inc. v. Stanley Works, 59 F.3d at 384, 396 (2d Cir. 1995)(concluding that defendant's use of a six-digit model number that contained the symbol "T50" was not confusingly similar to plaintiff's use of the mark, "Model T–50");

Several key distinctions may be observed between the products themselves and the overall impression created by the marks that would lead consumers to believe the products originated from different companies. See Streetwise Maps, 159 F.3d at 744. For example, although the two e-liquids are similar in size and shape, the e-liquids have different logos, different dress colors, and different typefaces. IP's label is a contemporary design with solid bands of color on a white background, sans serif font in three colors – black, white, and gold, and small flame design. IP's bottle is brownish and the cap is orange. Interstate Vape's label is a red-and-black steampunk design with a background of gears. The lettering is black with white shadowing on a red background. Interstate Vape's bottle is clear and the cap is black. Hence, in the Court's view, the marks are not confusingly similar.

Therefore, in considering the overall impression created by the mark, the Court concludes that the use of "24" in both parties' mark is not likely to cause confusion among potential customers. This factor weighs heavily against the likelihood of confusion.

### c. Relatedness of Goods

"Cases generally fit into one of three categories regarding the relatedness of the goods and services of the parties." Daddy's, 109 F.3d at 282. "First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely." Id. Interstate Vape attempts to distinguish its product by advocating that Interstate Vape's 24 Certified e-juice is a premium product and differs substantially from IP's lower-end, less expensive product. The record reflects that Interstate Vape's e-liquids range from $1.00 to $2.50 per milliliter. (Lynch Decl. ¶2.) IP's e-liquids cost approximately $0.85 per milliliter. Contrary to IP's argument, the difference in range of cost from $ 0.85 per milliliter and $1.00 milliliter is negligible. The Court finds that the parties' e-liquid products are related. Accordingly, this factor weighs in favor of likelihood of confusion.

### d. Marketing Channels Used

"Assessing whether the marketing channels used are different 'consists of considerations of how and to whom the respective goods or services of the parties are sold.'" Lucky's Detroit, LLC v. Double L, Inc., 533 Fed. App'x. 553, 559 (6th Cir. Aug. 9, 2013). "There is less likelihood of confusion where the goods are sold through different avenues." Leelanau Wine Cellars, Ltd. v. Black & Red, Inc., 502 F.3d 504, 519 (6th Cir. 2007); see also Weyerhaeuser NR Co. v. Louisiana-Pacific Corp., 2013 WL 5331246, *8 (M.D. Tenn. Sept. 23, 2013). The record reflects that IP advertises and sells its 24/7 products in tobacco shops, gas stations, convenience stores, its own website, and third-party websites. Interstate Vape sells its 24 Certified e-juice at its own vaping shops, to other vaping shops, and on its website. Interstate Vape does not sell its

products in tobacco shops, gas stations, or convenience stores. Thus, because there are similarities and dissimilarities in the marketing channels, the factor adds little weight to the analysis.

### e. Likely Degree of Purchaser Care

In analyzing the likely degree of purchaser care, "the standard used by the courts is the typical buyer exercising ordinary caution." Daddy's, 109 F.3d at 285 (quotation omitted). Where "even a minimal degree of care" would be sufficient for a consumer to differentiate between IP's and Interstate Vape's products, this factor favors lack of confusion. See, e.g., Gray v. Meijer, Inc., 295 F.3d 641, 650 (6th Cir. 2002). Further, "[t]he ultimate significance of a given degree of care . . . often will depend upon its relationship with the other seven factors." Daddy's, 109 F.3d at 285 (noting that this factor is less significant than the similarity of the marks at issue, such that, where marks are "quite similar . . . purchaser care will decrease the likelihood of confusion only minimally").

IP contends that, because the products at issue in this case have a similar price point, have virtually the same appearance, and are smaller in size than a pack of gum, consumers are not likely to exercise a high degree of care in purchasing them and, thus, this factor favors confusion. IP is correct that "the average customer is likely not to exercise a high degree of care in purchasing relatively inexpensive and fungible products." Gray, 295 F.3d at 650. However, IP offers no evidence that consumers exercise a low degree of care in purchasing e-liquids. In fact, IP acknowledges that "the decision of what e-cigarette brand to 'vape' is typically a taste and cost preference." (Plaintiff's Motion at 16.) Further, IP's argument fails to account for the relationship between this factor and the other factors in the likelihood of confusion analysis. See Homeowners, 921 F.2d at 1107. Given that the marks are not confusingly similar, a reasonable

consumer would have to exercise only a minimal degree of care to ascertain that the parties' products are not related or from a common source. Accordingly, this factor weighs against the likelihood of confusion.

### f. Defendants' Intent

The intent of a defendant in a trademark action is relevant because "purposeful copying indicates that the alleged infringer . . . believes that his copying may divert some business from the senior user." Daddy's, 109 F.3d at 286. IP argues that Interstate Vape was fully aware of IP's 24/7 Mark and signed a settlement agreement agreeing not to use or seek to register the 24/7 designation or mark or any other mark confusingly similar to IP's mark. IP argues that despite Interstate Vape's agreement, Interstate Vape continued to use the "24/7" clock mark and then only modified the clock mark slightly.

The Court finds no evidence of intent to infringe. As discussed above, Interstate Vape demonstrated at the hearing that it adopted the "24/7 Certified" steampunk design before receiving IP's original cease and desist letter. Upon receipt of the cease and desist letter, Interstate Vape then modified its new label to remove the "24/7" mark. Interstate Vape contends, and the Court agrees, that 24/7 and 24 Certified are not confusingly similar. However, "[i]ntent is an issue whose resolution may benefit only the cause of the senior user, not of an alleged infringer." Leelanau, 502 F.3d at 520 (internal quotation marks omitted). Thus, finding no intent to infringe, this factor does not accrue to IP's benefit.

### g. Likelihood of Expansion of Product Lines

"A strong likelihood that the alleged infringer will expand its business to compete with a senior user will contribute to a finding of a violation." Leelanau Wine Cellars, Ltd. v. Black &

13

Red, Inc., 502 F.3d 504, 520 (6th Cir. 2007). The parties agree that there is no likely expansion of the product lines and that this factor is neutral.

### h. Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." Daddy's, 109 F.3d at 284 (citation and internal quotation marks omitted). However, "a lack of such evidence is rarely significant." Id. IP states that at this stage of the litigation it has not uncovered any evidence of actual consumer confusion. Thus, this factor is neutral. See Ignition Athletic Performance Group, LLC v. Hantz Soccer U.S.A., LLC, 245 Fed. Appx. 456, 459 (6th Cir. 2007) (where no actual confusion has been shown, "this factor is not in favor of either party"); Weyerhaeuser NR Co. 2013 WL 5331246, *8.

### i. Safe Distance Rule

At the hearing, IP argued that the Court should apply "Safe Distance Rule" principles to this case arguing that Interstate Vape was required to modify its 24/7 Certified steampunk mark/design significantly. The Court rejects application of the Safe Distance Rule to the present case. The Safe Distance Rule is utilized by courts in enforcing permanent injunctions and "'prevent[s] known infringers from using trademarks whose use by non-infringers would not necessarily be actionable.'" Innovation Ventures, LLC v. N2G Distributing, Inc., 763 F.3d 524, 544 (6th Cir. 2014)(quoting Taubman Co. v. Webfeats, 319 F.3d 770, 778–79 (6th Cir. 2003)). Specifically, in contempt proceedings, the Safe Distance Rule "'reliev[es] the reviewing court of the need to retry the entire range of issues that may be relevant in an infringement action for each small variation the defendant makes to the enjoined mark.'" Id. (quoting PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 118 (2d Cir. 2008)). In the present case, no

permanent injunction has issued with respect to the "24/7" mark. Therefore, the Court declines to extend the Safe Distance Rule to cases involving voluntary settlement agreements.

Having considered the foregoing factors, the Court concludes that IP has not demonstrated that Interstate Vape's use of the mark "24 Certified" is likely to create a likelihood of confusion. As such, IP has not established a strong likelihood of success on the merits, at least at this point in time.

### B. Irreparable Harm

The next factor the Court must consider in deciding whether to grant a preliminary injunction is whether IP will suffer irreparable injury absent the injunction. Tenke, 511 F.3d at 550. In a trademark infringement case, "where a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course." Ford Motor Co. v. Lloyd Design Corp., 22 Fed Appx. 464, 469 (6th Cir. 2001). This is because in trademark infringement cases, a likelihood of confusion or possible risk to the requesting party's reputation satisfies the irreparable injury requirement. Lucky's Detroit LLC v. Double L, Inc., 533 Fed. Appx. 553, 560 (6th Cir. 2013)(citing Wynn Oil Co. v. Am. Way Services Corp., 943 F.2d 595, 608 (6th Cir. 1991)).

With respect to the trademark infringement claim, Plaintiff relies upon this presumed irreparable harm, but as indicated above, the Court does not find a strong showing that there is a likelihood of confusion. Therefore, this factor weighs against granting a preliminary injunction on this claim. See Ignition Athletic, 245 Fed. Appx. at 460 (where plaintiff "does not succeed on the merits . . . irreparable harm does not necessarily follow").

In contrast, in considering the remaining breach of contract claim raised in the motion, the Court finds this factor to weigh in favor of granting a preliminary injunction. Given the

continued sales of the 24/7 Certified product via third-party websites and given that Interstate Vape concedes that it has not made any effort to cause the third-party sales to cease, the Court finds the breach of the Settlement Agreement coupled with the possible risk to IP's reputation warrants a finding of irreparable harm.

**C. Substantial Harm to Others**

The third factor in determining whether to issue a preliminary injunction is "whether . . . the injunction would cause substantial harm to others." Certified Restoration, 511 F.3d at 550–51. This factor is most commonly examined in terms of the balance of hardship between the parties. Here, with respect to the trademark infringement claim, Interstate Vape will undoubtedly suffer some hardship if an injunction is issued, as they will be required to discontinue the use of their current 24 Certified mark and change the name of the product a second time. While rebranding could cost Defendants money, there is not sufficient evidence as to how much that would be. Given this lack of information, the Court finds this factor weights only slightly in favor of Interstate Vape.

With respect to the remaining breach of contract claim, Interstate Vape cannot claim it will be harmed by the Court ordering it to comply with the paragraph 3(b) of the Settlement Agreement to which it contractually agreed. Paragraph 3(b) specifically provides that Interstate Vape would cause to be removed from third-party websites its 24/7 products. Thus, this factor weighs in favor of IP.

**D. Public Interest**

The last factor in determining whether to grant a preliminary injunction "asks whether the public interest is advanced in issuing" the preliminary injunction. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 720 n. 4 (6th Cir. 2003). With

respect to the trademark infringement claim, this Court has already determined based solely on the record as it presently exists, that Interstate Vape's use of the 24 Certified mark is not likely to cause confusion. Therefore, the issuance of an injunction on this claim would not advance the public's interest.

With respect to the remaining breach of contract claims, the Court finds that there is no public interest in allowing Interstate Vape to breach its duty to cause to be removed all references to the Interstate Vape products which bear the 24/7 designation from "other websites" pursuant to a valid settlement agreement. Thus, the issuance of an injunction on this claim would advance public interest.

Having considered the relevant factors in light of the evidence before the Court, the Court finds that a preliminary injunction related to IP's trademark infringement claim or breach of contract claim related to that claim is not appropriate. No restrictions on the use of Interstate Vape's "24 Certified" mark is warranted at this time. However, IP has carried its burden of showing that a preliminary injunction is warranted for specific performance of Paragraph 3(b) of the Settlement Agreement requiring Interstate Vape to "cause to be removed" all references to the IV Products which bear the 24/7 designation from third-party websites.

**E. Bond**

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Despite the mandatory language of the rule, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." Appalachian Regional Healthcare, Inc. v. Coventry

Health and Life Ins. Co., 714 F.3d 424, 431 (6th Cir. 2013)(quoting Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir.1995)).

IP requests that the Court exercise its discretionary power to waive the security requirement of Fed. R. Civ. P. 65(c) because Interstate Vape contractually agreed in the Settlement Agreement that IP does not have to post a bond. Interstate Vape has not produced any evidence regarding potential damages that would be sustained upon a preliminary injunction requiring it to comply with paragraph 3(b) of the Settlement Agreement. Based on the record and evidence reviewed by the Court, the Court concludes that no bond is necessary in this case.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff, IP, LLC, for a temporary restraining order and preliminary injunction [DN 14] is **GRANTED IN PART AND DENIED IN PART** consistent with this Memorandum Opinion. Based on the Court's discussion above, the Court grants a preliminary injunction for specific performance of Paragraph 3(b) of the Settlement Agreement requiring Interstate Vape to "cause to be removed" all references to Interstate Vape products which bear the 24/7 designation from third-party websites.

**IT IS FURTHER ORDERED** that Defendants, Interstate Vape, Inc. and IV Supply Company, Inc., (1) shall identify the third-party websites that are selling Interstate Vape products which bear the 24/7 designation, (2) shall cause these products to be removed from the websites, and (3) if Defendants' efforts fail in removal of these products from the third-party websites, Defendants shall purchase the remaining product from these third-party retailers. **No later than**

**Friday, December 5, 2014,** Defendants shall certify to the Court the steps they took to comply with this Order.

                                                *[signature]*

                                        **Joseph H. McKinley, Jr., Chief Judge**
                                          **United States District Court**

                                                            November 6, 2014

cc: counsel of record